UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE ANDERSON, as Guardian ad litem for MAURINE ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | No.  1:22-cv-00165-KES-EPG<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 24) |

Plaintiff Lance Anderson, as guardian ad litem for Maurine Anderson ("Anderson"), brings this action against Defendant Allianz Life Insurance of North America ("Defendant"), alleging breach of contract and breach of the implied covenant of good faith and fair dealing in connection with the denial of benefits under a long-term health care insurance policy.  First Amended Complaint ("FAC"), Doc. 2-2.

Defendant moves for summary judgment, or in the alternative, partial summary judgment.  Motion for Summary Judgment ("Motion"), Doc. 24.  Plaintiff filed an opposition to the motion, to which Defendant replied.  Docs. 28, 29.  Defendant argues that Plaintiff's breach of contract claim fails because Anderson did not become eligible for benefits until June 2021, and that once Anderson became eligible, Defendant paid the benefits to which she was entitled.  Motion, Doc.

1

24-1 at 14-17.  In the alternative, Defendant seeks summary adjudication that Anderson did not meet the policy's eligibility requirements for long term care until June 30, 2021.  Doc. 24 at 2.  Defendant further argues that, because Plaintiff's breach of contract claim fails, the breach of the implied covenant of good faith and fair dealing claim also fails as a matter of law.  *Id.* at 18.  Plaintiff argues that summary judgment is not warranted because there are disputed issues of material fact, including as to whether Anderson became eligible for benefits prior to June 2021, whether Defendant paid all benefits due before and after June 2021, and whether Defendant acted in bad faith in its investigation of Anderson's claim and its refusal to pay additional benefits under the insurance policy.  Opposition to Motion ("Opposition"), Doc. 28 at 6, 25-27.

The motion was taken under submission without oral argument, pursuant to Local Rule 230(g).  For the reasons stated below, Defendant's motion for summary judgment is denied.

## I. BACKGROUND

Anderson was the beneficiary of a Comprehensive Long Term Nursing Care Policy ("Policy") issued by Defendant.  In June 2020, Anderson became a resident of Magnolia Crossing, a residential care facility for the elderly.  Plaintiff's Response to Statement of Undisputed Facts ("SUF") No. 8, Doc. 28-1.  Plaintiff alleges Defendant breached the terms of the Policy by failing to provide benefits owed to Anderson.  FAC ¶ 30, Doc. 2-2.  Plaintiff also alleges Defendant breached the implied covenant of good faith and fair dealing through its conduct during the investigation, its initial denial of Anderson's claim, and its underpayment of benefits.  *Id.* at ¶ 36.

### A. **Comprehensive Long Term Care Policy**

Defendant issued the Policy to Anderson in 1996.  SUF No. 1, Doc. 28-1.  The Policy provided two types of benefits: Long Term Nursing Care, and Home and Community Based Care.  Plaintiff agrees that the Long Term Nursing Care benefit is not at issue.  *See* Opposition, Doc. 28.  As such, the Court examines the Home and Community Based Care portion of the Policy.  The Policy defines Home and Community Based Care as follows:

> "Home and Community Based Care" means Home Health Care, Adult Day Care, Personal Care, Homemaker Services, Hospice Services and Respite Care. Such care must be performed under a

> plan of care developed by a Physician or a multidisciplinary team under medical direction, provided at least once every 7 days and must be recommended by a Physician as being required:
>
> 1. due to your inability to perform two or more Primary Activities of Daily Living; or
>
> 2. due to your Cognitive Impairment for which you need continual supervision.

SUF No. 4, Doc. 28-1.

The Policy does not further define "plan of care." It defines Home Health Care as "skilled nursing care or other professional medical or therapeutic services provided by licensed personnel in your home, another private home, a home for the aged or a residential care home." Responses and Objections to Plaintiff's Statement of Additional Material Facts ("AMF") No. 8, Doc. 29-1. The Policy defines Personal Care as "assistance with the Primary or Instrumental Activities of Daily Living, provided by a skilled or unskilled person who is duly licensed to perform such care where licensing is required." *Id.* at No. 11.

The Policy also defines "Primary Activities of Daily Living" ("ADL") and "Cognitive Impairment." *See* Exhibit A in support of Motion, Doc. 24-4 at 3-13. The seven activities that qualify as ADLs are: ambulation, bathing, continence, dressing, eating, toileting, and transferring. SUF No. 6, Doc. 28-1. Cognitive Impairment is defined as "the deterioration or loss" of "intellectual capacity which requires continual supervision to protect" the insured or others. *Id*. Such impairment is "measured by clinical evidence and standardized tests which reliably measure" impairment related to memory loss, orientation, and reasoning. *Id.* The impairment can be the result of senile dementia. *Id.*

If an insured qualifies for Home and Community Based Care, the insured is entitled to the following benefits following a ninety-day elimination period:

> 1. The Daily Benefit amount shown in the Benefit Schedule, but not to exceed your actual expenses incurred, for services provided by a licensed Professional Nurse or a licensed physical, speech, respiratory, or occupational therapist; and
>
> 2. The Daily Benefit amount shown in the Benefit Schedule, but not to exceed 80% of your actual expenses incurred, for services provided by a licensed home health care agency, licensed home health aide, licensed adult day care center or other skilled or

3

>unskilled person.
>
>In no event will the benefit payable for Home and Community Based Care be less than $50.00 per day.

SUF No. 7, Doc. 28-1.

**B.      Anderson's Claim for Benefits**

Anderson was diagnosed with dementia in 2019. SUF No. 9, Doc. 28-1. In June 2020, Anderson became a resident of Magnolia Crossing, a residential care facility for the elderly. *Id.* at No. 8. On June 29, 2020, Plaintiff submitted a claim for benefits under the Policy, indicating that Anderson required long-term care services. *Id.* at No. 9-10. The initial claim form indicated Anderson required assistance only with one ADL – bathing. *Id.* at No. 10.

Defendant's claim adjuster obtained an Attending Physician's Statement signed by Anderson's physician, Dr. Roger Gong. SUF Nos. 11-12, Doc. 28-1. Dr. Gong's Attending Physician's Statement indicated Dr. Gong had last seen Anderson on June 8, 2020, and that Anderson could independently perform ADLs. *Id.* at No. 13. In October 2020, Defendant's claim adjuster received an Attending Physician's Statement prepared by Kavneet Sandhu, a nurse practitioner, dated September 29, 2020. *Id.* at No. 16. Sandhu's Attending Physician's Statement indicated that, as of September 2020, Anderson needed stand-by assistance with several ADLs, including ambulation, bathing, dressing, and toileting. *Id.* at No. 17. It also indicated Anderson needed 24/7 care due to her progressive dementia and that Anderson was receiving the necessary supervision and care through assisted living. *Id.*; Exhibit F in support of Motion, Doc. 24-9 at 4.

In August and September 2020, Defendant's claim adjuster sought additional information from Magnolia Crossing regarding Anderson's medical condition and care. SUF Nos. 14, 18, 19, Doc. 28-1. Defendant's claim adjuster received a completed Long Term Care Facility Questionnaire ("Questionnaire"), dated December 21, 2020, and signed by a Magnolia Crossing administrator. SUF Nos. 18-20, Doc. 28-1. The Magnolia Crossing representative confirmed Anderson needed stand-by assistance with two ADL's: bathing and dressing. SUF No. 20, Doc. 28-1. On March 31, 2021, Defendant's claim adjuster also received a document entitled "Active Cares for Maurine Anderson," signed by Sadie Moreno, LVN, which indicated Anderson was

4

1    performing ADLs independently, though supervision or monitoring was needed to "ensure

2    safety" or to ensure Anderson could locate her back brace. SUF No. 22, Doc. 28-1; Exhibit I in

3    support of Motion, Doc. 24-12 at 3. Other evidence shows that Sandhu and Dr. Sidhu developed

4    a care plan for Anderson and that Sandhu was primarily responsible for implementing such care

5    plan. Declaration of Kavneet Sandhu, Exhibit 5 in support of Opposition, Doc. 28-6 at 71, ¶¶ 7-8.

6           On or about June 3, 2021, Defendant denied Anderson benefits under the Policy. SUF

7    No. 27, Doc. 28-1. In the claim denial letter, Defendant stated it relied on the information it had

8    received, including from Sandhu and Magnolia Crossing, in determining that Anderson was

9    independently performing ADLs and did not have a qualifying cognitive impairment. *Id.* at

10   No. 28. Plaintiff's counsel subsequently provided Defendant with additional documents, which

11   included a care plan dated June 30, 2021. *Id.* at Nos. 29-30. Based on the information provided

12   by Plaintiff's counsel, Defendant re-evaluated Anderson's eligibility and determined that

13   Anderson met the requirements for Home and Community Based Care as of June 30, 2021,

14   subject to a ninety-day elimination period. *Id.* at No. 33.

15          Defendant informed Plaintiff that Anderson was entitled to receive benefits and that it

16   would pay benefits for qualified costs accrued since September 28, 2021.[1] SUF Nos. 37, 38, Doc.

17   28-1. Defendant obtained invoices from Magnolia Crossing regarding the cost of services. SUF

18   No. 36, Doc. 28-1. The Magnolia Crossing invoices provide three separate charges: Room and

19   Board, Private Level of Care, and a Television Monthly Fee. Exhibit O in support of Motion,

20   Doc. 24-20. Defendant calculated that the qualified care expenses were less than $50.00 a day

21   and therefore paid Plaintiff the minimum daily benefit of $50.00 per day. *See* SUF Nos. 38, 39,

22   Doc. 28-1; *see also* Exhibit Q in support of Motion, Doc. 24-22 at 2. Defendant did not pay for

23   any portion of the "room and board" charges.

24          Plaintiff argues that there is evidence that the elimination period should have started

25   before June 30, 2021, that Anderson was entitled to benefits under the Policy since "at least the

26   fall of 2020," and that Defendant underpaid benefits. Opposition, Doc. 28 at 6, 19, 22.

27   ─────────────────

28   [1] The Policy includes a ninety-day elimination period. SUF No. 37, Doc. 28-1. Defendant informed Plaintiff that the ninety-day elimination period was satisfied on September 27, 2021. *Id.*

Specifically, Plaintiff argues the evidence shows Defendant knew that, as of September 2020, Anderson's ability to perform many of the ADLs was impaired, her dementia had progressed significantly, and she required long term supervision and assistance with ADLs. *Id.* at 28. Further, Plaintiff argues the evidence shows Anderson's qualified care expenses were more than the $50.00 per day that Defendant paid beginning in September 2021 and that Defendant underpaid the benefits due. *Id.* at 7, 14-15. Specifically, Plaintiff argues that evidence shows Defendant should have paid the portion of the "room and board" charge that constitutes qualified care because it includes the 24-hour care provided to Anderson. AMF No. 49, Doc. 29-1.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) (internal quotations omitted) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 841. The parties must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The Court then views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party moving for summary judgment must first carry its initial burden of production. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If, as in this case, the moving party would not have the burden to prove the disputed claim at trial, then it must carry its initial burden of production at summary judgment in one two ways: "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102. Then, to carry its burden of persuasion on the motion, the moving party must then "persuade the court that there is no genuine issue of material fact." *Id.*

6

1   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co.*, 475 U.S. 585–87; *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. EVIDENTIARY OBJECTIONS

The parties made evidentiary objections to the evidence presented in support of, and in opposition to, the pending motion. The Court declines to address each objection individually. Nevertheless, the Court notes that when evaluating a motion for summary judgment, a court need rely only on material facts. Fed. R. Civ. P. 56. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ("[I]f the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling.")

In its analysis, and in evaluating the merits of the motion for summary judgment, the court relies only upon any evidence that may be presented in an admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must review the evidence in light of what would be admissible before either the court or jury" [citation omitted]); *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (even if evidence is presented in form that is currently inadmissible, it may be considered on motion for summary judgment so long as admissibility defects could be cured at trial). Toward that end, the objections to any cited evidence – particularly as to objections related

to admissibility – are overruled.

## IV. ANALYSIS

### A. Breach of Contract Claim

The interpretation of an insurance policy provision is a question of law. *Am. Int'l Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co.*, 181 Cal. App. 4th 616, 622 (2010). Ordinary principles of contract interpretation apply to insurance contracts. *Id*. Those rules "require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id.* If contractual language is clear and explicit, it governs. Cal. Civ. Code § 1638. "If the language of the policy is not ambiguous, then the coverage inquiry ends, and the court determines coverage by applying the plain meaning of the unambiguous provisions of the policy." *Baker v. Nat'l Interstate Ins. Co.*, 180 Cal. App. 4th 1319, 1327 (2009). When a court concludes that policy language is ambiguous, it examines whether a finding of coverage is consistent with the objectively reasonable expectations of the insured. *Id.* at 1327. Where ambiguity remains after application of the reasonable expectations test, the Court construes the ambiguous policy language against the insurer and in favor of coverage. *Id.* at 1328.

Defendant argues that Plaintiff's breach of contract claim fails because the undisputed facts establish Plaintiff failed to submit the necessary documentation, including a plan of care, before June 30, 2021. Motion, Doc. 24-1 at 14. Defendant further argues that, after it received documentation that Anderson met the eligibility requirements, Defendant timely provided the benefits to which Anderson was entitled. *Id.* at 17. As a result, Defendant contends that there is not sufficient evidence to raise a triable issue of fact and that it is entitled to judgment as a matter of law on Plaintiff's claim that Defendant was required to provide benefits to Plaintiff prior to June 30, 2021, and on the claim that Defendant underpaid benefits to Anderson after that date. *Id.* The Court disagrees. There are genuine issues of material fact as to whether Anderson met the eligibility requirements before June 2021 and whether Defendant underpaid the benefits to which Anderson was entitled. As such, Defendant's motion for summary judgment as to the breach of contract claim is denied.

**1.  Whether Anderson met the eligibility requirements before June 2021**

Defendant argues Anderson was not eligible for benefits before June 2021 because the information provided to Defendant indicated Plaintiff did not meet the eligibility requirements and Plaintiff did not submit a signed plan of care. Motion, Doc. 24-1 at 15. The violation of an insurance policy's provisions requiring an insured to cooperate and meet various conditions to claim coverage may be grounds for denying a claim. *See Abdelhamid v. Fire Ins. Exchange*, 182 Cal. App. 4th 990, 999–1001 (2010). Whether an insured's failure to submit the required documentation merits denial of a claim is evaluated under the substantial performance standard. *See 1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co.*, 135 Cal. App. 4th 1008, 1018. "The issue is not whether the insurer has received every item of information that it has requested or has in its hands the exact type of information that it prefers when deciding a claim, rather the question is whether there was enough evidence of whatever form and however acquired that the insurer would act unreasonably if it refused to pay the claim." *Chierfue Her v. State Farm Ins. Co.*, 92 F. Supp. 3d 957, 971–72 (E.D. Cal. 2015) (citing *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1046 (Ct. App. 1984). Substantial performance is a question of fact and occurs when "the insured's noncompliance was … minor and the insured complied with at least some of the specific requirements at issue." *Trishan Air, Inc. v. Fed. Ins. Co.,* 635 F.3d 422, 432 (9th Cir. 2011); *see also Cline v. Yamaga*, 97 Cal. App. 3d 239, 248 (1979).

First, there is a genuine dispute as to when Anderson became eligible for benefits under the Policy. Defendant relies in part on Dr. Gong's Attending Physician's Statement, dated June 8, 2020, as evidence Anderson was able to complete all ADLs and did not suffer from cognitive impairment that required continual supervision. Motion, Doc. 24-1 at 10. However, Defendant also received an Attending Physician's Statement, dated September 29, 2020, and signed by nurse practitioner Sandhu, indicating Anderson needed stand-by assistance with four ADLs and needed 24/7 care due to her progressive dementia. SUF Nos. 16-17, Doc. 28-1; Exhibit F in support of Motion, Doc. 24-9 at 4. Sandhu's Attending Physician's Statement also indicated Anderson was receiving the necessary supervision through "assisted living." Exhibit F in support of Motion, Doc. 24-9 at 4. The Questionnaire submitted by Magnolia Crossing in December 2020 similarly

indicated that Anderson needed "stand-by assistance" with respect to bathing and dressing. Exhibit G in support of Motion, Doc. 24-1 at 10. While defendant argues the March 2021 Magnolia Crossing Questionnaire indicated that Anderson was performing ADLs independently as of that date (though with needed supervision to "ensure safety"), that does not necessarily contradict the evidence that Anderson suffered a cognitive impairment and needed assistance with multiple ADLs in September 2020 and December 2020. A reasonable fact finder could find that Anderson met the ADL and/or the cognitive impairment requirements for at least some portion of the period before June 2021, and potentially as early as September 2020.

Second, Defendant argues that Plaintiff did not submit a plan of care, and therefore a validly supported claim for benefits, until June 2021. But there is a genuine dispute as to when Plaintiff complied with the Policy provisions for submitting a plan of care. The Policy provides that Home and Community Based Care "must be performed under a plan of care developed by a Physician or a multidisciplinary team under medical direction." SUF No. 4, Doc. 28-1. The Policy does not further define what constitutes a plan of care.

There exists a material dispute of fact as to whether Plaintiff substantially complied, prior to June 2021, with the requirement to have a plan of care. Based on the record, a reasonable jury could find that Anderson was receiving treatment under a plan of care as early as September 2020, and that Defendant was on notice that Anderson was receiving medical treatment under such a plan of care after receiving the Sandhu Attending Physician's Statement dated September 29, 2020. The Sandhu Attending Physician's Statement identified the insured's need for long term care and treatment, the 24/7 frequency of the care to be provided, and providers of such treatment. The records contemplated that continuous care would need to be provided to Anderson.

Defendant also fails to establish as a matter of law that a "plan of care" requires more specificity than Plaintiff provided. As noted, the Policy does not define "plan of care." The plain meaning of the term "plan of care" is broad enough that the jury could find it satisfied by the information provided in the Sandhu Attending Physician's Statement, the Magnolia Crossing Questionnaire, and related documentation. To the extent there is any remaining ambiguity in the

1  meaning of the term "plan of care" under the Policy after considering the objectively reasonable
2  expectations of the insured, the Court construes the ambiguous policy language against the
3  insurer and in favor of coverage.  *Baker*, 180 Cal. App. 4th at 1328.  There is therefore a genuine
4  dispute as to when Anderson became eligible for benefits and, thus, summary judgment and
5  summary adjudication are inappropriate.

### 2.      Whether Defendant Underpaid Benefits

Defendant argues that it paid all benefits owed to Anderson after June 2021.  Motion, Doc. 24 at 17.  Plaintiff argues that Defendant underpaid benefits because, in calculating eligible expenses, Defendant failed to account for the cost of care component contained within the "room and board" charges.  Opposition, Doc. 28-1 at 9-10.

The Policy provides that it will reimburse qualified care expenses for "Home and Community Based Care," which includes "Home Health Care, Adult Day Care, Personal Care, Homemaker Services, Hospice Services and Respite Care."  SUF No. 4, Doc. 28-1.  The Policy does not explicitly include or exclude coverage for room and board.  However, the Policy defines Home Health Care to include "skilled nursing care or other professional medical or therapeutic services provided by licensed personnel in . . . a residential care home."  *Id.* at 5.  There is a material dispute as whether at least a portion of Magnolia Crossing's "room and board" fees include such costs of care, which would make them qualified care expenses.  That factual dispute as to whether the room and board charge includes such costs of care precludes summary judgment or summary adjudication as to whether portions of Anderson's room and board charge at Magnolia Crossing are covered by the Policy.

Under the Policy, Home and Community Based Care would provide coverage for 80% of expenses incurred "for services provided."  SUF No. 7, Doc. 28-1 at 7.  Defendant indicated to Plaintiff in its December 1, 2021, benefits letter that it would not reimburse for room and board. Exhibit N in support of Motion, Doc. 24-19.  Defendant has submitted itemized invoices from Magnolia Crossing that list separate charges for "room and board" and "private level of care." Exhibit O in support of Motion, Doc. 24-20.  However, Plaintiff has submitted evidence that Magnolia Crossing's "room and board" charge includes, in part, certain costs of care for activities

of daily living.  *See, e.g.,* Ex. 11 in support of Opposition, Doc. 28-6 at 196.  Anderson also required 24-hour supervision, potentially requiring covered care on a 24/7 basis.  *See* Exhibit M in support of Motion, Doc. 24-17 at 3.  Given the factual dispute on the extent to which covered care is included in the "room and board" charges, neither party has set forth sufficient evidence for the Court to determine as a matter of law whether Defendant underpaid benefits by failing to pay any portion of the room and board charges.  On these facts, the Court cannot find that the Policy unambiguously precludes payment of some of the room and board costs.  *See Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.*, 186 Cal. App. 4th 556, 567 (2010) (internal citation omitted) (ambiguity is determined in the context of the subject policy and the circumstances of the case).

Accordingly, the court denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim and denies Defendant's motion for an order adjudicating that Anderson did not meet the Policy's eligibility requirements until June 30, 2021.

### B. Breach of Implied Covenant of Fair Dealing Claim

Defendant argues that summary judgment is appropriate on Plaintiff's claim for breach of the implied covenant of fair dealing because there was no breach of contract, and the claim was therefore "handled appropriately and in conformance with the requirements of the Policy."  Motion, Doc. 24-1 at 18.  The implied covenant of good faith and fair dealing prohibits a contracting party from injuring the other party's right to receive the benefits of an agreement.  *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 314 (1999).  "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause."  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (internal citation omitted).  To show that the reason for withholding benefits was unreasonable or without proper cause, Plaintiff must establish "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby

1    depriving that party of the benefits of the agreement." *Chateau Chamberay Homeowners Ass'n v.*
2    *Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001) (internal citation omitted). The duty
3    of good faith is not "excused by the insured's failure to fulfill a policy condition… the insurer's
4    duty of good faith is independent of the insured's performance of such contractual obligation."
5    *McCormick*, 153 Cal. App. 3d at 1044 (internal citation omitted). When there is a genuine issue
6    as to coverage, whether that be a legal or factual dispute, then denial of a bad faith claim may be
7    appropriate. *Guebara v. Allstate Ins. Co.*, 237 F.3d 993-994. However, an insurer may not avoid
8    its duty to conduct a thorough investigation by relying on the genuine issue doctrine. *Id.* at 996.
9         Defendant's argument is premised on its assertion that it did not breach the contract, and,
10   therefore, did not act in bad faith, in denying coverage prior to June 2021 or in its determination
11   of the benefits due under the Policy. As set forth above, there are material disputed facts that
12   preclude summary judgment on the breach of contract claim. Additionally, viewing the evidence
13   before the court in the light most favorable to Plaintiff, a reasonable trier of fact could conclude
14   that by October 2020 Defendant was aware, or could have determined with reasonable further
15   investigation after receiving the Sandhu statement, that Anderson had met the Policy's Home and
16   Community Based Care eligibility requirements as early as September 2020. Based on the
17   evidence before the court, a reasonable trier of fact could also conclude that Defendant failed to
18   pay the full benefits owed under the policy even after June 2021. The material disputed facts,
19   including whether Defendant met its duty to investigate, preclude summary judgment on the
20   claim for breach of the implied covenant of fair dealing. *See Amadeo v. Principal Mut. Life Ins.*
21   *Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002) (reasonableness of insurer's conduct is generally
22   question of fact for jury). A "trier of fact may find that an insurer acted unreasonably if the
23   insurer ignores evidence available to it which supports a claim." *Wilson v. 21st Century Ins. Co.*,
24   42 Cal. 4th 713, 721 (2007) (citing *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617,
25   1623 (1996)).
26        Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for breach of
27   the implied covenant of good faith and fair dealing is denied.
28

## V.  CONCLUSION

For the reasons stated above, it is hereby ordered that:

1. Defendant's motion for summary judgment is DENIED; and

2. Defendant's motion for an order adjudicating that Anderson did not meet the Policy's eligibility requirements until June 30, 2021, is DENIED.

IT IS SO ORDERED.

Dated:   May 17, 2024

UNITED STATES DISTRICT JUDGE